UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHERI L. SCHUH,

                Plaintiff,

                                        **Hon. Hugh B. Scott**

        v.

                                        **16CV636V**

                                        **Report**
NANCY A. BERRYHILL[1], Acting                       **and**
Commissioner of Social Security,                 **Recommendation**

                Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 13 (plaintiff), 16 (defendant Commissioner)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff ("Sheri Schuh" or "plaintiff") filed an application for disability insurance benefits on April 2, 2013. That application was denied initially and on reconsideration. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated March 12, 2015, that the plaintiff was not

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on July 22, 2016, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on August 5, 2016 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 13, 16). The motions were deemed submitted on June 21, 2017 (Docket No. 15).

## FACTUAL BACKGROUND[2]

Plaintiff was born on February 4, 1971, and has a high school education. Her past relevant work was as an event planner. The ALJ determined that plaintiff was unable to perform that work because of its required standing, walking, lifting (R. 25).

Plaintiff's impairments are degenerative disc disease of the cervical and lumbar spine and myofascial pain syndrome (R. 20). The ALJ noted that, although she complains of numbness and tingling in her left upper and lower extremities, plaintiff did not have any medical imaging that showed any nerve root compression and electrodiagnostic testing showing evidence of neuropathy or radiculopathy (R. 20). Plaintiff had normal motor strength and sensation; therefore, the ALJ found that the musculoskeletal listing was not met (R. 20). As for plaintiff's claimed fibromyalgia, applying the closest Social Security impairment listing, Listing 14.06, the ALJ concluded that this Listing was not met, since plaintiff did not have any marked limitations of daily living, maintenance of social functioning, or in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace (R. 21). Plaintiff also complained of

---

[2]References noted as "(R.__)" are to the certified record of the administrative proceedings, filed with this Court as Docket No. 7.

suffering carpel tunnel syndrome, but the ALJ concluded that medical tests did not indicate the syndrome and that plaintiff was told in June 2013 that she did not have carpel tunnel syndrome and was advised to stop wearing wrist braces (R. 20, 361).

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff complained of pain in every joint and had headaches five to ten times per week (R. 21), alleging in her application that she had cervical and lumbar disc herniation, headaches, Lyme disease, left ovarian pain, left hand pain, and carpel tunnel syndrome (R. 21, 161-76). The ALJ found that plaintiff's medically determinable impairments could be expected to cause the alleged symptoms but plaintiff's statements as to their intensity, persistence, and limiting effects were "not entirely credible" (R. 21). As for her degenerative disc disease of the cervical and lumbar spine, the record was not consistent with total disability (R. 22). Although she had cervical spine fusion of C5-C6, there was no evidence of spinal cord compression (R. 291-92, 22). An MRI of her lumbar spine in December 2014 showed no evidence of spinal stenosis or nerve root compromise or other significant acute problem (R. 457, 22). The ALJ noted that plaintiff was treated by numerous specialists "without any definitive diagnosis or objective, clinical explanation for the claimant's constellation of complaints" (R. 22). The ALJ found that plaintiff's claims of total disability were not fully credible, since her complaints were not consistent from specialist to specialist and she alleged different origins for her back pain (R. 24). Plaintiff did not take significant medication and ceased taking prescription medication when she believed they did not work (R. 24). With the pain plaintiff alleged, the ALJ believed that she would be taking more pain medication than she actually did (R. 24). The ALJ gave great weight to the opinion of consultative examiner, Dr. John Schwab, D.O., who examined plaintiff on June

3

4, 2013 (R. 22-23, 24, 353). Dr. Schwab opined that plaintiff had no physical limitations despite her reported ailments (R. 356, 23), finding that plaintiff's "physical exam was grossly out of proportion to stated diagnoses. Therefore, there are no restrictions based on the finding of today's examination" (R. 356). The ALJ found that Dr. Schwab's opinion was supported by a lack of significant diagnoses by plaintiff's treating sources and consistent with plaintiff's electrodiagnostic testing (R. 24).

In December 2013, doctors diagnosed plaintiff with Morton's neuroma of the left foot (R. 450-51, 453, 23). A podiatrist treated plaintiff with intermittent injections and steroids (R. 23, 433-49).

Plaintiff saw Dr. Jafar Siddiqui for her neck and back pain (R. 454, 22). The ALJ notes that plaintiff told Dr. Siddiqui that she could perform her activities of daily living and engage in aerobic activity (R. 482, 22), her cervical spine and left shoulder showed full range of motion without pain (R. 483, 22), while her lumbar spine had restriction in range of motion (R. 483, 22). Dr. Siddiqui prescribed Cyclobanzaprine, performed an epidural injection, and plaintiff reported using Cyclobanzaprine sparingly (R. 484, 476 (reported by Megan Kuechle, PA), 22). In October 29, 2014, plaintiff also was prescribed Gabapentin (R. 475, 22), but plaintiff stopped taking this medicine by December 2014 claiming that it was ineffective (R. 465, 22).

The ALJ, however, gave little weight to the opinion of Dr. Diane Sutter that plaintiff was disabled by fatigue (R. 24, 517), while plaintiff only claimed that she was moderately limited by her fatigue (R. 513, 515, 24). The ALJ also gave some weight to the findings of Dr. Siddiqui and Megan Kuechle, PAC (R. 24). On January 21, 2015, Kuechle conducted a functional assessment, countersigned by Dr. Siddiqui, finding that plaintiff should avoid stooping, kneeling,

4

crouching, and crawling while noting plaintiff could occasionally do these functions (R. 560, 24). They found that plaintiff could lift, carry, push, and pull less than ten pounds and sit, stand, and walk for three hours in an eight-hour workday (R. 560, 24). Ms. Kuechle concluded that plaintiff was not able to perform sedentary or light exertional work as of August 19, 2014 (R. 560, 24). The ALJ, however, rejected some of these opinions since plaintiff did not complain of increased pain with lifting or carrying and Dr. Siddiqi did not document any recommendation regarding lift restrictions (R. 24). The ALJ concluded that plaintiff was self-limiting the amount she could lift (R. 24) as well as wore wrists braces when carpel tunnel syndrome was not indicated (R. 20, 361). The ALJ also noted that Dr. Siddiqui prescribed only Cyclobenzaprine (R. 25, 454).

The ALJ found that plaintiff's residual functional capacity was for sedentary work except where plaintiff is required to sit or stand at will (R. 21). The ALJ supports this finding with the "lack of significant objective evidence supporting [plaintiff's] subjective symptoms" (R. 25). Plaintiff could not perform her past relevant work as an event planner since that occupation requires more standing, walking, and lifting than permitted by plaintiff's residual functional capacity (R. 25).

The ALJ sought the opinion of the vocational expert on a hypothetical claimant similar to plaintiff's age, education, employment experience, and residual functional capacity with additional non-exertional limitations. The expert opined that the hypothetical claimant could work in such occupations as telephone solicitor (unskilled position, sedentary exertion level), order clerk (unskilled, sedentary), or charge account clerk (unskilled, sedentary) (R. 26, 56-57).

5

# DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the

national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).

*Application*

In the instant case, plaintiff argues that the ALJ failed to evaluate properly the opinion of pain management specialist, Dr. Siddiqui (Docket No. 13, Pl. Memo. at 19-24; R. 22, 24, 454), and her gynecologist, Dr. Sutter (Docket No. 13, Pl. Memo. at 20-21; Docket No. 18, Pl. Reply Memo. at 9-10; R. 24, 502). She contends that the ALJ did not provide good reasons for rejecting these treating sources (Docket No. 13, Pl. Memo. at 19). Next, she argues that the ALJ did not do a function-by-function analysis as required by SSR 96-8p before reaching her residual functional capacity analysis (id. at 24-26; Docket No. 18, Pl. Reply Memo. at 9-10). Plaintiff faults the ALJ for not finding her Morton's neuroma to be a severe impairment (cf. R. 20) or explain why it was rejected as an impairment (Docket No. 13, Pl. Memo. at 27-28; Docket No. 18, Pl. Reply Memo. at 10-11). Plaintiff seeks remand for calculation of benefits (Docket No. 13, Pl. Memo. at 28-29).

Defendant argues that the ALJ properly weighed the medical record presented here (Docket No. 16, Def. Memo. at 14-19). She contends that the ALJ also properly assessed plaintiff's residual functional capacity (id. at 19-20). The ALJ also properly determined plaintiff's severe impairments, considering, and then rejecting, Morton's neuroma (id. at 20-22).

I. Opinions of Treating Sources

Social Security regulations require the ALJ to consider six factors in weighing treating source's opinion, 20 C.F.R. § 416.927(c) (Docket No. 13, Pl. Memo. at 19-20). These factors are the examining relationship between the claimant and the treating source; treating relationship between them; supportability of the opinion; consistency of that opinion with the record as a

whole; the treating source's specialization; and other factors brought to the ALJ's attention, id. (id.).

Plaintiff argues that the ALJ failed to give good reasons for discounting the opinions of Drs. Sutter and Siddiqui (id. at 20-21).

### A. Dr. Sutter

First, Dr. Sutter noted plaintiff's fatigue and in April 2014 reported that plaintiff was fatigued for at least one year (R. 515), thus she was fatigued as of her onset date (Docket No. 13, Pl. Memo. at 21). The ALJ gave little weight to that opinion (R. 24; see R. 517) with little explanation (Docket No. 13, Pl. Memo. at 21). Dr. Sutter opined that, due to her fatigue, plaintiff could not work a full workday (R. 579), although she also opined that plaintiff might be able to work on a trial basis (R. 579; cf. Docket No. 16, Def. Memo. at 16 n.2). The ALJ did not even account in the residual functional capacity plaintiff's acknowledged moderate fatigue (Docket No. 13, Pl. Memo. at 21).

Defendant counters that Dr. Sutter's finding was conclusory and failed to specify the functional limitation arising from plaintiff's fatigue (Docket No. 16, Def. Memo. at 16). Defendant notes that Dr. Sutter also reported that plaintiff denied her fatigue (R. 487, 492, 496, 505; Docket No. 16, Def. Memo. at 16). Plaintiff also reported that her estrogen treatment improved her energy level (R. 413) and testified that, despite her fatigue, she sometimes did not experience fatigue for weeks at a time (R. 52; Docket No. 16, Def. Memo. at 16-17).

Plaintiff, in reply, argues that the ALJ rejected the sole medical source opinion on her fatigue, that of consultative internist Dr. Schwab (R. 353, 22-23). Despite claiming to give great weight to Dr. Schwab's findings (R. 24), instead, the ALJ found a restrictive residual functional

9

capacity that differed with Dr. Schwab (Docket No. 18, Pl. Reply at 6), only accepting the conclusion that plaintiff had no physical limitations (R. 23, 356). This creates an evidentiary gap in the record requiring remand (Docket No. 18, Pl. Reply at 6), see Martin v. Berryhill, No. 16CV6184, 2017 U.S. Dist. LEXIS 54370, at *7 (W.D.N.Y. Apr. 7, 2017) (Geraci, Ch.J.). Plaintiff concludes that the ALJ effectively rendered a medical assessment based on the bare medical record without the assistance of any medical advice (id.).

The ALJ gave little weight to Dr. Sutter's opinion merely based on finding only moderate limitations due to plaintiff's claimed fatigue (R. 24). The ALJ did not consider the factors in weighing this opinion. The ALJ needed to consider plaintiff's claimed fatigue and the extent to which it affected her ability to work. If fatigue did not rise to the level of a listed impairment, it might be a non-exertional limitation. As such, it should be incorporated into the residual functional capacity analysis. Therefore, on this basis, plaintiff's motion for judgment on the pleadings (Docket No. 13) should be **granted** and the matter **remanded** for further proceedings.

B.   Dr. Siddiqui

As for Dr. Siddiqui's opinion, plaintiff faults the ALJ for giving that opinion some but not great weight with an insufficient explanation (Docket No. 13, Pl. Memo. at 21). She notes that in addition to being prescribed a muscle relaxant Cyclobenzaprine (which was not effective for diffuse pain from fibromyalgia), plaintiff was prescribed Gabapentin for one year (but it was ineffective) (id. at 22; R. 433, 493, 465), as well as Naproxen, which she testified helped to a degree (R. 45; Docket No. 13, Pl. Memo. at 22). Plaintiff finds that Dr. Siddiqui's lift restriction was consistent with her testimony that she self-limited herself to lifting no more than 10 pounds, as noted by the ALJ (Docket No. 13, Pl. Memo. at 22; R. 24). Dr. Siddiqui found

that plaintiff could sit only for three hours in a workday, ruling out sedentary work (R. 560; Docket No. 13, Pl. Memo. at 23).

Defendant responds that plaintiff had a history of not following medical advice, self-diagnosis, and exaggerating her medical issues (Docket No. 16, Def. Memo. at 18). As plaintiff explains in her reply, she stopped taking Gabapentin and Cymbalta when determined not to be effective (Docket No. 18, Pl. Reply Memo. at 7).

The ALJ gave some weight to Dr. Siddiqui's January 21, 2015, physical capacity evaluation (R. 560-63, 24). The ALJ limited the weight given to this finding based on plaintiff self-limiting the amount of weight she would lift (R. 24) and prescribing a muscle relaxant Cyclobenzaprine. This evaluation is supported by Dr. Siddiqui's examination findings back in August 2014 of plaintiff's loss of strength for her left arm, left hip, and left side of her back, as well as her limited range of motion in her lumbar spine (R. 483, 468, 474, 478; Docket No. 13, Pl. Memo. at 23). Defendant counters that these same examination reports show that plaintiff has a full range of motion of her shoulder and cervical spine (Docket No. 16, Def. Memo. at 17; R. 468, 483). Both parties point to plaintiff having only 4/5 strength in her left extremities (R. 468, 483; compare Docket No. 13, Pl. Memo. at 23 with Docket No. 16, Def. Memo. at 17) but reach opposite conclusions. While defendant argues that Dr. Siddiqui's finding can be diminished because he only prescribed Cyclobenaprine (Docket No. 16, Def. Memo. at 17; R. 484), Dr. Siddiqui also prescribed left transforaminal epidural steroid injection on August 19, 2014, as well as the drug prescribed (R. 484); this report was noted by defendant (Docket No. 16, Def. Memo. at 17). Thus, the ALJ should have credited Dr. Siddiqui's January 2015 evaluation

of plaintiff's capacities. On this ground, plaintiff's motion for judgment (Docket No. 13) also should be **granted**.

II. Residual Functional Capacity Analysis

    A. Function-by-Function Analysis

Plaintiff complains that the ALJ failed to perform a function-by-function analysis, instead merely concluding that plaintiff could perform the full range of light work with a sit/stand option (Docket No. 13, Pl. Memo. at 26; R. 21). Defendant counters that the ALJ did perform a thorough analysis of plaintiff's functional abilities (R. 22-24; Docket No. 16, Def. Memo. at 19-20).

Review of the ALJ's decision shows that he did consider plaintiff's limitations and functionality. Plaintiff merely cites to the residual functional capacity finding (R. 21) without noting the subsequent discussion supporting that finding (R. 21-25) wherein the ALJ reviews the medical record to support that finding. Thus, as for this ground, plaintiff's motion (Docket No. 13) for judgment on the pleadings should be **denied**.

    B. Morton's Neuroma

Morton's neuroma is a neuromalike (or tumor like) mass of neurovascular bundle of nerve cells of the intermetatarsal spaces, Taber's Cyclopedic Medical Dictionary at 1148, 1204-05 (16th ed. 1989) (see also Docket No. 16, Def. Memo. at 20, Morton's neuroma is a thickening of tissue around the toe). Plaintiff argues that the ALJ failed to consider this ailment as a severe impairment and failed to explain its rejection (Docket No. 13, Pl. Memo. at 27). Defendant counters that the ALJ considered, and then discounted as a listed limitation, plaintiff's neuroma (Docket No. 16, Def. Memo. at 20; R. 23). There, the ALJ noted plaintiff's December 2013

12

treatment for Morton's neuroma of the left foot (R. 23, 450-51, 453), that she received intermittent injections and steroids (R. 23, 433-49). The ALJ, however, does not note either the effectiveness of these treatments or whether plaintiff still has limitations due to this condition. According to defendant (Docket No. 16, Def. Memo. at 21; R. 448, 446, 442, 437, 433), plaintiff received several injections and treatments, was offered but declined surgery on the neuroma, and had no further treatment after November 2014 (R. 433).

Plaintiff complains that the Morton's neuroma was not considered at step two, the determination whether that condition was a severe impairment, rather than at step three, determining whether it affects her residual functional capacity. As defendant notes (Docket No. 16, Def. Memo. at 20-21; R. 450-51) nothing in the medical record indicated a functional limitation arising from this condition. This condition did not rise to the level of a severe impairment, thus the ALJ did not need to note it in step two of his analysis. Plaintiff's motion (Docket No. 13) on this ground should be **denied**.

III.    Remand for Calculation of Benefits

Given the findings that need further examination on remand (consideration of Dr. Sutter and Dr. Siddiqui's opinions), remand for mere calculation of plaintiff's disability benefits now is inappropriate.

**CONCLUSION**

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 16) should be **DENIED** and plaintiff's motion for similar relief in her favor (Docket No. 13) should be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the

basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott  
Hon. Hugh B. Scott  
United States Magistrate Judge

Buffalo, New York  
September 14, 2017